UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------- X
PAKISTAN TEHREEK-E-INSAF USA LLC        :
a/k/a PTI USA, LLC,                     :
                                        :
                      Plaintiff,        :
                                        :            20-CV-2392 (VEC)
       -against-                        :
                                        :               ORDER
                                        :
PTI USA and JOHN DOE, a fictitious person :
in charge of the organization,          :
                                        :
                      Defendants.       :
------------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/29/2020

VALERIE CAPRONI, United States District Judge:

Plaintiff PTI USA, LLC moves to disqualify Mr. Jonathan Silver from representing

Defendant PTI USA, on the ground that Mr. Silver acquired confidential information during a

prior consultation that unfairly disadvantages Plaintiff in this case.  Specifically, a purported

representative of PTI USA, LLC, Mr. Imran Igra,[1] in order to obtain representation for PTI USA,

LLC, conveyed information about the present dispute to Mr. Silver before this action was

commenced.  Igra Decl. (Dkt. 20-2) ¶¶ 4, 9.  Because the Court finds that Mr. Silver is at least

potentially in a position to use privileged information acquired during the consultation to benefit

Defendant, the motion for disqualification is granted.

The Second Circuit has recognized that the court must balance a party's interest in

retaining counsel of its choice with the need to maintain a fair, adversarial justice system.  *United

States v. Quest Diagnostics Inc.*, 734 F.3d 154, 166 (2d Cir. 2013).  Disqualification, being a

drastic remedy, is disfavored; a disqualification motion could be made in bad faith and will

---

[1]     The parties dispute whether Mr. Igra has authority to act on behalf of PTI USA, LLC.  The Court does not
resolve that question at this juncture.

generally be granted only if the trial process would otherwise be tainted.  *See Bd. of Educ. of*

*N.Y.C. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) ("[W]e believe that unless an attorney's

conduct tends to taint the underlying trial, by disturbing the balance of the presentations in one of

the two ways indicated above, courts should be quite hesitant to disqualify an attorney." (citation

omitted)).  Despite that reluctance, "any doubt is to be resolved in favor of disqualification."

*Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975).  Accordingly, disqualification may be

ordered "where the attorney is at least potentially in a position to use privileged information

concerning the other side [gained] through prior representation" and give his present client an

unfair advantage.  *Quest Diagnostics*, 734 F.3d at 166 (quoting *Nyquist*, 590 F.2d at 1246).

In this case, the parties do not dispute that Mr. Igra, speaking to Mr. Silver as a

prospective client, reasonably expected his communications to be privileged.[2]  Accordingly, the

only question is whether Mr. Silver, as a result of his consultation with Mr. Igra, potentially

acquired information about this matter that would unfairly benefit his current client.

To determine whether present representation could confer an unfair advantage, the Court

must consider, among other things, "the amount and nature of the information that has been

proffered to the attorney, its availability elsewhere, its importance to the question at issue . . . , as

well as actual prejudice that may flow from that information."  *See In re Agent Orange Prod.*

*Liab. Litig.*, 800 F.2d 14, 19 (2d Cir. 1986) (citation omitted).  Disqualification should not be

---

[2]        An attorney may bear a duty of confidentiality even in the absence of a formal attorney-client relationship.
*See Blue Planet Software, Inc. v. Games Int'l, LLC*, 331 F. Supp. 2d 273, 276–77 (S.D.N.Y. 2004) ("[A]mple case
law makes clear that an attorney nonetheless may be disqualified despite the lack of a formal attorney-client
relationship.").  "[W]here an attorney receives confidential information from a person who, under the circumstances,
has a right to believe that the attorney, as an attorney, will respect such confidences, the law will enforce the
obligation of confidence irrespective of the absence of a formal attorney client relationship."  *Id.* (collecting cases);
*see also BT Holdings, LLC v. Vill. of Chester*, No. 15-CV-1986, 2015 WL 8968360, at *4 (S.D.N.Y. Dec. 14, 2015)
("[C]ourts generally only find attorney disqualification appropriate in the absence of a formal attorney-
client relationship where the attorney had access to the purported client's confidential information and the
purported client had a reasonable basis to believe that that information would be kept confidential.").

ordered if a reasonably competent attorney could independently obtain the confidential

information, such as through the discovery process.  *See Tradewinds Airlines, Inc. v. Soros*, No.

08-CV-5901, 2009 WL 1321695, at *8 (S.D.N.Y. May 12, 2009) (collecting cases); *see also*

*Med. Diagnostic Imaging, PLLC v. CareCore Nat'l, LLC*, 542 F. Supp. 2d 296, 315 (S.D.N.Y.

2008) ("Therefore, not every ethical violation will necessarily lead to disqualification.").

In this case, the parties do not dispute that Mr. Igra spoke with Mr. Silver about the case

by phone and exchanged text messages and emails related to the subject of this litigation.  *See*

Silver Decl. (Dkt. 22) ¶ 10; Igra Decl., Ex. B (Dkt. 20-4).  Those emails and text messages,

however, were voluntarily filed on the public docket by Plaintiff.  *See* Igra Decl., Ex. C (Dkt. 20-

5).  Given that public disclosure, any attorney representing Defendant would have access to the

same information, and no unfair advantage would be conferred by Mr. Silver's continued

representation, unless there was additional information that was conveyed.

In response to the Court's inquiry as to whether any other information was conveyed, Mr.

Igra filed a supplemental declaration, claiming that he discussed, in detail, his "strategies and

concerns/worries" with Mr. Silver during an in-person encounter on or about March 16, 2020.[3]

Igra Supp. Decl. (Dkt. 29-1) ¶¶ 6–10.  While most of the categories of information that Mr. Igra

describes in his declaration appear to be discoverable, Mr. Igra avers that he shared his litigation

objectives and his opinions as to Defendant's counterarguments and evidence, which, for

instance, could influence Defendant's approach towards any settlement discussions.  *See id.* ¶ 10.

---

[3]      There is ambiguity as to when the in-person consultation occurred.  Mr. Igra's text messages and email
indicate that the meeting was set for March 10, 2020, Igra Decl., Ex. B; Mr. Igra's initial declaration states that the
meeting occurred on or about March 20, 2020, Igra Decl. ¶ 9; and Mr. Igra's supplemental declaration represents
that the meeting occurred on or about March 16, 2020.  Igra Supp. Decl. (Dkt. 29-1) ¶ 6.  Mr. Silver provides no
clarity on this issue, although he presumably has business records that would establish the date of the meeting.

According to Mr. Silver, the consultation was brief because he immediately informed Mr.

Igra that he could not take the case and referred Mr. Igra to another attorney.  Silver Decl. ¶ 10;

Silver Supp. Decl. (Dkt. 30) ¶¶ 2–3.  He denies having discussed any of the topics identified in

Mr. Igra's declaration.  Silver Supp. Decl. ¶¶ 2–3.  Mr. Silver, however, acknowledges that he

had spoken to Mr. Igra by phone, arranged an in-person meeting, and received and reviewed Mr.

Igra's emails before he determined that he had a conflict of interest stemming from a prior

representation involving PTI USA, LLC.  Silver Decl. ¶ 10; Silver Notice of Appearance (Dkt.

10-1) ¶¶ 2–4.  Mr. Silver reportedly tried to cancel the scheduled in-person meeting after

reviewing Mr. Igra's emails, but counsel does not explain why he failed to identify the conflict of

interest earlier.  *See* Silver Notice of Appearance ¶ 4.  Counsel also seems to suggest in his initial

declaration that Mr. Igra appeared for the meeting despite being informed of the conflict, *id.*, but

counsel's subsequent declaration merely indicates a call was made—and it is silent on whether

the two in fact spoke.  *See* Silver Decl. ¶ 10 ("[B]efore [Mr. Igra] arrived I called him to tell him

not to come, but he came anyway.").  *But see* Igra Decl. ¶ 13 (denying receiving any

communication about conflict of interest prior to meeting).  Although Mr. Igra and Mr. Silver

were communicating by text and email, it is undisputed that Mr. Silver did not send anything in

writing to Mr. Igra about his conflict of interest, which would have been prudent.  *See id.*

The Court finds that the circumstances of this case tip in favor of disqualification.

Among the factors to be considered are Defendant's right to its choice of counsel, the possibility

of disruption to the litigation, Plaintiff's interests in confidentiality, and the maintenance of a fair

and adversarial process.  *See Heard v. Statue Cruises LLC*, No. 16-CV-1079, 2020 WL 1285456,

at \*6 (S.D.N.Y. Mar. 18, 2020).  Defendant's preference is weighty, as in every case, but

Defendant has not argued that it will be prejudiced by the disqualification; indeed, it has not

strenuously opposed the motion.  While Mr. Silver submitted declarations as to pertinent facts,

Defendant did not file a memorandum of law despite two opportunities to do so, instead merely

repeating that it defers to the Court's judgment.  *See, e.g.*, Silver Supp. Decl. ¶ 10.

The Court also notes that any burden imposed by disqualification is minimal and

arguably attributable to Mr. Silver.  He failed to identify the potential conflict during his initial

conversations with Mr. Igra, even though the earlier matter was filed two years ago and also

involved PTI USA, LLC.  *See* Silver Notice of Appearance ¶ 3.  Furthermore, Mr. Silver decided

to represent Defendant in this litigation despite being aware of his potential disqualification, an

issue that he volunteered in his notice of appearance.

Moreover, granting Plaintiff's motion at this stage poses minimal disruption while

ensuring the integrity of the judicial process.  The case is in its infancy, no discovery has yet

occurred, no other motion has been significantly litigated, and no other deadlines would be

impacted.  Meanwhile, Plaintiff's declarations show a risk that Mr. Silver may have been privy

to non-discoverable information about this case, and the Court cannot rule out the possibility of

taint unless an evidentiary hearing is held to resolve Mr. Igra's and Mr. Silver's conflicting

representations.  Although such a hearing could be managed so that it would not intrude on

confidential discussions, it would create a sideshow unrelated to the merits of this case.[4]

Plaintiff's interests in confidentiality, as well as the complete overlap in subject matter

between this case and Mr. Igra's asserted communications with Mr. Silver, also weigh in favor of

disqualification.  According to the Second Circuit, a presumption of disqualification arises if a

former attorney is opposing his former client in an action "substantially related" to the former

matter.  *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 235 (2d Cir. 1977).  Here,

---

[4]      Given the COVID-19 pandemic, it is also unclear when such a hearing could be safely held in a format that
would best enable the Court to make a credibility determination.

although the relationship between Mr. Igra and Mr. Silver was relatively brief and did not evolve

into formal representation, relevant documents were exchanged, and the two spoke multiple

times about the case.  One can fairly infer that litigation strategies and thoughts and

impressions—not just discoverable facts—were shared.  Although, as Defendant points out, Mr.

Igra has put forth only general topics of what was discussed, nothing more can be required

without piercing the very confidence to which Plaintiff is entitled.

      For the foregoing reasons, the Court concludes that Mr. Silver is at least potentially in a

position to use Plaintiff's confidences against it in this litigation, thereby tainting the fairness of

this process.[5]  To be clear, the Court is not concluding that Mr. Silver has violated or would

violate his ethical obligations should he continue his representation.  Nevertheless, his

disqualification assures the integrity of the judicial process, protects Plaintiff's right to

confidentiality, and causes minimal disruption to this litigation.  Mr. Silver is ordered to remain

as counsel of record until replacement counsel is found; he must not perform any other legal

work in this case unless otherwise ordered, nor may he provide any advice to incoming counsel

except to relay the procedural history of this case.  No later than **June 12, 2020**, either new

counsel for Defendant must file an appearance, at which point Mr. Silver will be relieved, or Mr.

Silver must file a status report explaining why new counsel has not been found.  The Clerk of

---

[5]     Plaintiff filed an *ex parte* exhibit (Dkt. 27-1, Ex. A) which this Court ordered to be either publicly disclosed or stricken from the record.  Dkt. 33.  Plaintiff has opted to move to strike the exhibit from the record.  Dkt. 34. That motion is hereby granted.  Accordingly, the *ex parte* Exhibit A plays no part in the Court's ruling on disqualification.

Court is respectfully directed to terminate the pending motions at docket entries 20 and 34.


**SO ORDERED.**


**Dated: May 29, 2020**
      **New York, NY**

                                        **VALERIE CAPRONI**
                                      **United States District Judge**